# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AGGIE INVESTMENTS, L.L.C., | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.  4:21-CV-0013 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| CONTINENTAL CASUALTY | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Continental Casualty Company's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #8).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

Plaintiff Aggie Investments, L.L.C., ("Aggie Investments") owns and operates Spice & Tea Merchants of McKinney ("Spice & Tea Merchants"), which is a local spice and tea room in McKinney, Texas (Dkt. # 6 ¶ 5).  Aggie Investments purchased an insurance policy (the "Policy") from Continental Casualty Company ("Continental") for Spice & Tea Merchants' commercial property located at 110 S. Tennessee St., McKinney, Texas (Dkt. # 6 ¶ 5).  The Policy was an all-risk insurance policy that provided for losses to Spice & Tea Merchants' commercial property, business personal property, business income, and extra expenses (Dkt. #6 ¶ 6).  Coverage started on November 15, 2019, and ended on November 15, 2020 (Dkt. # 6 ¶ 5).

During the Policy's coverage, the COVID-19 pandemic caused the City of McKinney to issue a stay at home order that temporarily stopped business activities.  *See* (Dkt. #6 ¶¶ 5–9).

Consequently, Spice & Tea Merchants could not utilize its facility and suspended business operations (Dkt. # 6 ¶¶ 7–9).  Because of this closure, Aggie Investments suffered economic loss and submitted an insurance claim with Continental (Dkt. #6 ¶¶ 7–12).  Spice & Tea Merchants later reopened, but Aggie Investments alleges it continued to have economic losses while it operated under restricted capacity requirements that the state of Texas implemented (Dkt. #6 ¶¶ 8–9).

Aggie Investments claims that these economic losses are a "Covered Cause of Loss" under the Policy because it provides coverage for "risks of direct physical loss" unless excluded or limited by the Policy (Dkt. #6 ¶ 10).  *See also* (Dkt. #6, Exhibit 1 at p. 20).  More specifically, Aggie Investments relies on the Policy's Business Income provision, which provides:

> [Continental] will pay for the actual loss of Business Income [Aggie Investments] sustain[s] due to the necessary "suspension" of [its] "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

*See* (Dkt. #6 ¶ 10); (Dkt. # 6, Exhibit 1 at p. 41).  Aggie Investments asserts that due to the pandemic, consumer fear, and government orders, it suffered a "direct physical loss" of its property and is entitled to coverage (Dkt. #6 ¶ 11).

Furthermore, Aggie Investments relies on the Civil Authority provision because it covers "the actual loss of Business Income [Aggie Investments] sustain[s] and reasonable and necessary Extra Expense [it] incur[s] caused by action of civil authority that prohibits access to the described premises." *See* (Dkt. # 6, ¶ 12); (Dkt. #6, Exhibit 1 at p. 67).  This civil authority action, however, must result from "direct physical loss of or damage to property at locations, other than described premises . . . ." (Dkt. #6, Exhibit 1 at p. 67).

After receiving the insurance claim, Continental denied coverage because it believed the Policy required "actual, demonstrable harm of some form to the insured premises" (Dkt. #6 ¶ 13). Aggie Investments then filed a claim against Continental in state court for (1) breach of contract, (2) attorney's fees, and (3) a declaratory judgment under Texas law (Dkt. #1, Exhibit 4 at pp. 6–8). Continental removed the action to the Eastern District of Texas on January 8, 2021 (Dkt. #1).

Aggie Investments filed its Amended Complaint on February 10, 2021, realleging its claims from state court (Dkt. #6). Continental moved for a Rule 12(b)(6) motion to dismiss the claims on March 2, 2021 (Dkt. #8). Aggie Investments responded on March 17, 2021 (Dkt. #11), and Continental provided its Reply on March 24, 2021 (Dkt. #14). Aggie Investments filed a sur-reply on March 31, 2021 (Dkt. #15).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine

whether the complaint states a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'"  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Federal courts have increasingly been asked to decide how government orders issued due to COVID-19 should apply to commercial insurance policies.  *See e.g.*, *Michael Cetta, Inc. v.*

4

*Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405, at *1 (S.D.N.Y. Dec. 11, 2020). The Parties' dispute is the latest in that line of cases.

Aggie Investments and Continental disagree on how to interpret "direct physical loss of or damage to property" under the Policy.  These terms are found in the Policy's Civil Authority and Business Income provisions, but they are undefined.  *See* (Dkt. #6, Exhibit 1 at pp. 41, 67).

Aggie Investments argues that government orders caused loss of use to its commercial property and other properties around it.  This loss of use, Aggie Investments contends, constitutes "direct physical loss of or damage to property," so it deserves coverage under the Civil Authority and Business Income provisions (Dkt. #6 ¶¶ 10–14).  However, Continental contends that demonstrable, physical harm to property is required under these provisions (Dkt. # 8 at pp. 17– 31). It argues that these government orders do not cause this type of harm, so the provisions are inapplicable.

Under Texas law, the general rules of contract interpretation apply when interpreting an insurance policy.  *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004)).  "Interpreting a contract is a question of law the Court must decide."  *Selery Fulfillment, Inc. v. Colony Ins. Co.*, No. 4:20-CV-853, 2021 WL 963742, at *3 (E.D. Tex. Mar. 15, 2021).  The Court's responsibility is to determine the Parties' intent based on the Policy's written words.  *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 831 (Tex. 2009).  Present interpretations should not affect this inquiry.  *Colony Ins. Co. v. Custom Ag Commodities, LLC*, 272 F. Supp. 3d 948, 956 (E.D. Tex. 2017)

"Whether a contract is ambiguous is also a question of law."  *Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*, 379 F. Supp. 3d 554, 559 (E.D. Tex. 2019) (citing *Am. Int'l*

*Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010)).  A contract is only ambiguous if there are two reasonable interpretations to it.  *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  If there is only one reasonable interpretation, however, the Court must construe it as a matter of law and enforce it as a written.  *Citigroup Inc.*, 649 F.3d at 371 (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)).

An insurance policy's terms should be given their plain and ordinary meaning unless the policy shows a different meaning was intended.  *Colony Ins. Co.*, 272 F. Supp. 3d at 957 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. McMurray*, 342 F. App'x 956, 958 (5th Cir. 2009)).  The policy's terms should be read together and given effect as such.  *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 766 (Tex. 2014).

"While reviewing the policy, '[n]o one phrase, sentence, or section of [it] should be isolated from its setting and considered apart from the other provisions.'"  *Selery Fulfillment*, 2021 WL 963742, at *3 (quoting *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)).  The Court may not insert its own language or reword the policy—it must abide by the policy's written words.  *Id.*

Because the Court finds the Policy's provisions require demonstrable harm to property to trigger coverage, Aggie Investments cannot plausibly state a claim.

**A.  The Business Income Provision**

Aggie Investments argues Continental wrongfully denied coverage under the Business Income provision because it suffered a direct physical loss of its property due to the City of McKinney's and state of Texas's government orders.  In other words, Aggie Investments asserts that loss of full access to its property is sufficient under the Policy.  *See* (Dkt. #6, Exhibit 1 at p. 41).

6

The Business Income provision states that Continental will provide coverage in the event Aggie Investments suffers "direct physical loss" of its commercial property:

> [Continental] will pay for the actual loss of Business Income [Aggie Investments] sustain[s] due to the necessary "suspension" of [its] "operations" during the "period of restoration.  The "suspension" *must be caused by direct physical loss of or damage to property at the described premises*.  The loss or damage must be caused by or result from a Covered Cause of Loss

(Dkt. #6, Exhibit 1 at p. 41) (emphasis added).

This Court recently dealt with a similarly worded provision in *Selery Fulfillment*.  *See Selery Fulfillment*, 2021 WL 963742, at *4.  Given the provision's focus on direct physical loss, and the Fifth Circuit's requirement that structural harm occur under similar provisions, the Court found that the business income provision did not cover the insured's claim.  *Id.* at *4–7.  The fact that any business income would be paid during a "period of restoration," which contemplated rebuilds and repairs, buttressed this conclusion.  *Id.* at *7.  In sum, "direct physical loss" under the policy required a tangible alteration to property, which preventative government orders did not do.  *See id.* at *4–7.  Texas federal courts agree with this proposition in near uniformity.[1]

Likewise, the Court finds that "direct physical loss" requires a distinct, structural alteration to Aggie Investments' commercial property.  *See id.* at *4–7.  Aggie Investments does not allege this occurred.  Like the insured in *Selery Fulfillment*, Aggie Investments complains that government orders restricted access to its property.  *See id.* at *4.  But loss of access, or even restricted access, is not the tangible alteration of structures that "direct physical loss" contemplates.  Furthermore, like in *Selery Fulfillment*, the period of restoration reinforces the Court's conclusion

---

[1] *See e.g.*, *DZ Jewelry, LLC, d/b/a Zadok Jewelers v. Certain Underwriters at Lloyds London*, No. CV H-20-3606, 2021 WL 1232778, at *4–6 (S.D. Tex. Mar. 12, 2021); *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *3 (E.D. Tex. Dec. 7, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 359–60 (W.D. Tex. 2020).  *But see Berkseth-Rojas v. Aspen Am. Ins. Co.*, No. 3:20-CV-0948-D, 2021 WL 101479, at *5 (N.D. Tex. Jan. 12, 2021) (applying Minnesota law).

because it focuses on rebuilds, repairs, and even a new building location.  *See id.* at *7; (Dkt. #6, Exhibit 1 at p. 36).

Therefore, Aggie Investments cannot rely on the Business Income provision to plausibly state a claim.

### B.   The Civil Authority Provision

Aggie Investments also argues the Civil Authority Provision covers its losses.  However, this provision cannot help Aggie Investments plausibly state a claim because government orders did not cause "direct physical loss of or damage to property."  *See* (Dkt. #6, Exhibit 1 at p. 67).

Under the civil authority provision, two requirements must be met.  The civil authority action must (1) prohibit access to the insured premises and (2) be due to direct physical loss of or damage to property at locations other than the insured's premises.  *See* (Dkt. #6, Exhibit 1 at p. 67); *DZ Jewelry, LLC*, 2021 WL 1232778, at *6 (summarizing a similar provision).

Aggie Investments cannot plausibly claim that there was a "direct physical loss of or damage to property" at other premises.  As this Court stated in *Selery Fulfillment*, this type of provision requires there to be a causal link between prior tangible damage and the civil authority action.  *See Selery Fulfillment*, 2021 WL 963742, at *8; *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011).  But the civil authority actions here were taken to prevent the anticipated threat of COVID-19—not because there was structural alterations or property damage at other premises.  *See Selery Fulfillment* 2021 WL 963742, at *8; *DZ Jewelry, LLC*, 2021 WL 1232778, at *6; *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *4 (E.D. Tex. Dec. 7, 2020).

In this context, the causal link between property damage and civil authority action is missing.  *See Selery Fulfillment*, 2021 WL 963742, at *8.  As a result, Aggie Investments cannot plausibly state a claim using the Civil Authority provision.

**C.  Attorney's Fees**

Because the Court finds the Policy's terms are unambiguous, and Continental rightfully rejected the insurance claim, Aggie Investments' claim for attorney's fees is also dismissed.  *See BITCO Gen. Ins. Corp. v. Acadia Ins. Co.*, 427 F. Supp. 3d 838, 857–58 (E.D. Tex. 2019).

## CONCLUSION

It is therefore **ORDERED** that Defendant Continental Casualty Company's Rule 12(b)(6) Motion to Dismiss (Dkt. #8) is hereby **GRANTED**.

The entirety of Aggie Investments' claims against Continental are hereby **DISMISSED WITH PREJUDICE**.  All relief not previously granted is hereby **DENIED**. The Clerk is directed to **CLOSE** this civil action.

**SIGNED this 20th day of April, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE